**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**(TAMPA DIVISION)**

| | |
|---|---|
| **EB RUMBLE FRANCHISING, LLC**, a Virginia limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>**THREE SOUTH TAMPA LLC**, a Florida Limited Liability Company,<br>**ONE HILLSBOROUGH LLC**, a Florida Limited Liability Company,<br>**TEMPER STUDIOS LLC**, a Florida Limited Liability Company,<br>**HENRY TAYLOR**, a resident of Florida, and<br>**HALEY HUNT**, a resident of Florida,<br><br>Defendants. | Case No. 8:26-cv-2383 |

**<u>COMPLAINT FOR INJUNCTIVE RELIEF</u>**

Plaintiff EB Rumble Franchising, LLC ("Rumble"), by and through its undersigned counsel, brings the following Complaint against Defendants Three South Tampa LLC ("Three South Tampa"), One Hillsborough LLC ("One Hillsborough"), Temper Studios LLC ("Temper"), Henry Taylor, and Haley Hunt (collectively, "Defendants") for injunctive relief. Collectively, Three South Tampa, One Hillsborough, and Mr. Taylor are referred to as the "Franchisee Defendants."

**INTRODUCTION**

1. This action seeks injunctive relief to prevent the irreparable harm caused by the Franchisee Defendants premature abandonment of their Rumble® fitness studios and their continuing violations of post-termination and non-compete obligations under two Franchise Agreements, including the use of Rumble's customer information, name, and trademarks. It also seeks damages against Temper and Haley Hunt resulting from their tortious interference with the Franchise Agreements, and to enjoin all Defendants from their coordinated and unlawful scheme to violate the covenant not to compete and other obligations in the Franchise Agreements, exploit the goodwill associated with Rumble's brand, and infringe on Rumble's trademark rights.

2. Pursuant to the Franchise Agreements, Rumble granted the Franchisee Defendants the right to operate Rumble® branded fitness studios in Downtown Tampa, Florida and South Tampa, Florida (respectively, the "Downtown Studio" and the "South Tampa Studio," and collectively, the "Studios") using Rumble's trademarks, goodwill, confidential information, customer information, proprietary systems, operating methods, and franchise business model. On July 20, 2026, Mr. Taylor sent Rumble a notice stating that the Franchisee Defendants ceased operating the Studios as of July 18, 2026. Prior to the Franchisee Defendants' abandoning their Rumble® Studios, Defendants brazenly attempted to capitalize on Rumble's name, goodwill, and customer information by announcing to customers of the Studios that Defendants would be rebranding the Studios under a competing business, "Temper,"

and would temporarily close to undergo renovations in preparation for the relaunch. Defendants also sent communications to customers announcing that they were "officially kick[ing] off" Temper's summer series workout program called "Forge". The announcement invited the Franchisee Defendants' "former member[s]" to join Temper.

3. Rumble subsequently terminated the Franchise Agreements, due to the Franchisee Defendants' abandonment of their Rumble® Studios, effective August 7, 2026. Notwithstanding such termination, Defendants continue to solicit customers of the Rumble® Studios and use customer information in connection with the operation, marketing, and promotion of their competing business, Temper. They also continue to use the Rumble® tradename and trademarks in advertisements related to the former Rumble® Studios and online.

4. Despite the termination of their franchise relationship with Rumble, the Franchisee Defendants have failed and refused to comply with their contractual post-termination obligations, including requirements to de-identify their former Studios, cease use of Rumble's trademarks and other intellectual property, cease soliciting customers of their former Rumble® studios, cease use of customer/member information that belongs to Rumble, return confidential information, and honor the restrictive covenants prohibiting competition with the Rumble® franchise system. The Franchisee Defendants are also acting in concert with and/or through Ms. Hunt and Temper to violate such obligations. As a result of the Franchisee Defendants' ongoing breaches and Defendants' competitive misconduct, Rumble seeks immediate

preliminary and permanent injunctive relief.

5. Absent action from this Court, Defendants' ongoing violations will not cease and Rumble will continue to suffer irreparable harm.

## THE PARTIES

6. Rumble is a Virginia limited liability company with its principal place of business located at 126 Garrett Street, Suite J, Charlottesville, Virginia 22902. Rumble licenses third parties the right to develop, own, and operate, as part of the Rumble® franchise system (the "System"), fitness studios that provide a boxing-inspired, high-energy workout experience with the strategic fusion of boxing, HIIT, power, and strength training. Rumble's franchisees are licensed to use the Rumble® tradename, trademarks, service marks, and related marks, to operate their fitness studios.

7. Rumble's parent company and sole member is Extraordinary Brands, LLC ("EB"), a Virginia limited liability company. EB's parent company and sole member is AE Capital Group, LLC ("AE Capital"), a Delaware limited liability company. The sole member of AE Capital is Paul Flick, a resident of Virginia. The principal places of business of EB and AE Capital are located at 126 Garrett Street, Suite J, Charlottesville, Virginia 22902. None of the members of EB or AE Capital are citizens of Florida. Accordingly, Rumble is a citizen of Virginia and is not a citizen of Florida.

8. Defendant One Hillsborough is a Florida limited liability company with its principal place of business located at 119 W Tyler St Ste B-1, Tampa, Florida 33602. It is the franchisee of the Downtown Studio. Defendant One Hillsborough's sole

member is Mr. Taylor and he wholly owns it.

9. Defendant Three South Tampa is a Florida limited liability company with a principal place of business located at 209 S Dale Mabry Hwy, Tampa, Florida 33609. It is the franchisee of the South Tampa Studio. Defendant Three South Tampa's sole member is Mr. Taylor and he wholly owns it.

10. Defendant Temper Studios LLC is a Florida limited liability company with a principal place of business located at 119 W. Tyler Street, Suite B-1, Tampa, Florida, the location of the Three South Tampa and Mr. Taylor's former South Tampa Studio.

11. Defendant Henry Taylor is a citizen and resident of the state of Florida.

12. Defendant Haley Hunt is a citizen and resident of the state of Florida.

## JURISDICTION AND VENUE

13. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14. This action involves trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, et seq. This Court has subject matter jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a), 1121, and 28 U.S.C. §§ 1331 and 1338.

15. This Court has supplemental jurisdiction over Rumble's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims in this action that they form part of the same case or controversy.

16. This Court has personal jurisdiction over Defendants because each Defendant has a principal place of business or is a resident of Florida and therefore subject to general personal jurisdiction in this State. In addition, this action arises directly from the Franchisee Defendants' conduct in Florida, including the ownership, operation, abandonment, and termination of the franchised businesses at issue, and Defendants operation of the competing business Temper, the solicitation of customers, the alleged misuse of Rumble's Marks, Confidential Information, and customer data, and the other acts and omissions giving rise to Rumble's claims that took place in Florida. Defendants have purposefully conducted business in Florida and purposefully availed themselves of the privileges and benefits of doing business in Florida. Accordingly, the exercise of personal jurisdiction over Defendants comports with Florida law and the requirements of due process.

17. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims against Defendants herein occurred in this District.

## FACTUAL BACKGROUND

### A. The Rumble® Franchise System and Trademarks

18. Rumble's predecessor, Rumble Franchise SPV, LLC, transferred the assets associated with the Rumble® System to Rumble in July 2025. Prior to that, Rumble Franchise SPV, LLC acquired the assets associated with the Rumble® System from its predecessor, Rumble Franchise, LLC, in 2023. Accordingly, Rumble is the successor-in-interest to the franchise agreement related to the South Tampa Studio

between Defendant Three South Tampa and Rumble Franchise SPV, LLC. Rumble is also the successor-in-interest to the franchise agreement related to the Downtown Studio between Defendant One Hillsborough and Rumble.

19. As stated above, Rumble licenses third parties the right to develop, own, and operate, as part of the Rumble® System, fitness studios that provide boxing-inspired, high-energy workout experiences with the strategic fusion of boxing, HIIT, power, and strength training pursuant to the System's proprietary standards, specifications, and procedures. There are an estimated seventy franchised Rumble® locations that exist and operate nationwide, including five in the State of Florida.

20. Rumble owns and has the exclusive right to license and enforce the Rumble® name and related trademarks, tradenames, service marks, and other commercial symbols (the "Marks"), including the Marks with United States Patent and Trademark Office ("USPTO") registration numbers 5148086, 7600026, 5229039, 5189658, 5264943, and 5264945, as well as the goodwill to use Rumble® Marks and System in connection with the operation of their franchised fitness studios. Attached as **Exhibit A** is a true and correct copy of a list of Rumble's Marks that have been registered with the USPTO.

21. Since their introduction, the Marks have been used continuously in interstate commerce by Rumble and its predecessors and affiliates.

22. The validity of the Rumble® Marks with registration numbers 5148086, 5229039, 5189658, 5264943, and 5264945, their registration, and Rumble's exclusive right to use them in commerce are incontestable under 15 U.S.C. §§ 1065 and 1115(b)

because those Marks have been in continuous use in commerce for more than five (5) years and the required affidavit has been filed with the United States Patent and Trademark Office.

23. Rumble and its predecessors and affiliates have expended a great amount of money, time, and effort in creating, maintaining, improving, advertising, and promoting the Rumble® Marks and System throughout the United States. By virtue of such efforts, the Rumble® Marks have become associated in the minds of the general public, with Rumble alone, and valuable goodwill has been built up in the Rumble® Marks.

**B. The Downtown Studio and South Tampa Studio Franchise Agreements and Personal Guarantees**

24. Pursuant to the franchise agreement with an effective date of November 9, 2021, Mr. Taylor was granted the right to operate the Downtown Studio for a term of ten (10) years. On the same day, Mr. Taylor executed a Guarantee, Indemnification, and Acknowledgement Agreement, pursuant to which he unconditionally guaranteed the full performance and satisfaction of his obligations and those of any assignee under the franchise agreement. On October 11, 2023, Mr. Taylor assigned the franchise agreement to One Hillsborough pursuant to the Assignment of Franchise Agreement to Operating Entity. One Hillsborough is an entity owned entirely by Mr. Taylor. These agreements are collectively referred to as the "Downtown Franchise Agreement." Attached as **Exhibit B** is a true and correct copy of the Downtown Franchise Agreement.

25. Pursuant to the franchise agreement with an effective date of July 25, 2024, Three South Tampa, an entity owned by Mr. Taylor, was granted the right to operate the South Tampa Studio for a term of ten (10) years. On the same day, Mr. Taylor executed a Guarantee, Indemnification, and Acknowledgement Agreement, pursuant to which he unconditionally guaranteed the full performance and satisfaction of Three South Tampa's obligations and performance under the franchise agreement. These agreements are collectively referred to as the "South Tampa Franchise Agreement." Attached as **Exhibit C** is a true and correct copy of the South Tampa Franchise Agreement.

26. The Downtown Franchise Agreement and the South Tampa Franchise Agreement are collectively referred to as the "Franchise Agreements." The terms and provisions of the Franchise Agreements contain substantially similar material provisions.

27. In exchange for the license to use the Rumble® Marks and System, the Franchisee Defendants were obligated to pay various fees to Rumble for the entire 10 year term of the Franchise Agreements, including royalty fees in the amount of seven percent (7%) of the Gross Sales (as the term is defined in the Franchise Agreements) generated by each Rumble® fitness studio over the immediately preceding week (the "Royalty Fees"). (*See* Exs. B & C at Art. 5.2.)

**C. The Franchisee Defendants' Trademark Obligations**

28. Pursuant to Article 4.1 of the Franchise Agreements, the Franchisee Defendants acknowledged and agreed to the validity of Rumble's Marks and agreed

they are the sole and exclusive property of Rumble and/or its affiliates. (*Id.*, Art. 4.1) The Franchisee Defendants also acknowledged and agreed that their right to use the Marks and System is derived solely from the Franchise Agreements and is limited to the operation of their Rumble® fitness studios in compliance with the Franchise Agreements. (*Id.*) The Franchisee Defendants also agreed to display and use the Marks only in the manner and form authorized by Rumble and that they shall not conduct any other business using the Marks. (*Id.,* Art. 4.2.)

**D. Rumble's Confidential Information and Customer Data**

29. Pursuant to Article 12.1 of the South Tampa Franchise Agreement, Defendants Three South Tampa and Mr. Taylor agreed that "all information relating to the System and to the development and operation of the Studio, including, without limitation, the Manual, Franchisor's training programs, members and supplier lists, customer data, or other information or know-how distinctive to the development or operation of a Rumble Studio" is "Confidential Information" and "proprietary and trade secrets of [Rumble]." (Ex. C, Art. 12.1.) Defendants Three South Tampa and Mr. Taylor further agreed that upon Rumble's request, they will return Rumble's Confidential Information. (*Id.*)

30. Moreover, Defendants Three South Tampa and Mr. Taylor agreed that they "shall not acquire any interest in the Confidential Information other than the right to utilize it in the development and operation of [their] Studio in accordance with [their Franchise Agreement]," and that they will not use such information "for any other purpose of any kind." (*Id.*)

31. Pursuant to Article 12.2 of the South Tampa Franchise Agreement, Defendants Three South Tampa and Mr. Taylor also agreed:

> . . . that the existence of any claims [Defendants Three South Tampa and Mr. Taylor] may have against [Rumble] . . . shall not constitute a defense to the enforcement of this Article 12. [Three South Tampa and Mr. Taylor] acknowledges and agree[] that any failure to comply with the requirements of this Article 12 will cause [Rumble] irreparable injury for which no adequate remedy at law is available, and [Three South Tampa and Mr. Taylor] accordingly agree[] that [Rumble] shall be entitled to injunctive relief . . . to enforce the terms of this Article 12. [Three South Tampa and Mr. Taylor] shall pay all costs and expenses, including, without limitation, reasonable attorneys' fees, incurred by [Rumble] in connection with the enforcement of this Article 12. The foregoing shall be in addition to any other remedies [Rumble] may have under this Agreement or applicable law.

(*Id*. at Art. 12.2.)

32. Article 12.3 of the Downtown Franchise Agreement is substantially identical to this injunctive relief provision. (*See* Ex. B Art. 12.3.)

33. Pursuant to Article 12.1 of the Downtown Franchise Agreement, Defendants One Hillsborough and Mr. Taylor agreed that "all information relating to the System and to the development and operation of the Studio, including, without limitation, the Manual, Franchisor's training program, members and supplier lists, or other information or know-how distinctive to a Rumble Franchise" is "Confidential Information" and "proprietary and trade secrets of [Rumble]." (*See* Ex. B Art. 12.1(A).) Moreover, Defendants One Hillsborough and Mr. Taylor agreed that they "shall not acquire any interest in the Confidential Information other than the right to utilize it in the Studio," and that they will not use such information "in any other

business or in any manner not specifically authorized or approved in writing by [Rumble].” (*Id.*)

34. Pursuant to Article 10.3 of the Downtown Franchise Agreement, Defendants One Hillsborough and Mr. Taylor agreed that “[u]pon expiration or termination of this Agreement, [Defendants One Hillsborough and Mr. Taylor] shall have no further access or rights to the member information and [Rumble] shall be the sole owner of such information." (*See* Ex. B Art. 10.3.) Member information includes names, addresses, contact information, payment information, etc. (*Id.*)

**E. The Franchisee Defendants’ Non-Compete and Non-Solicitation Obligations**

35. Pursuant to Article 13.1(A) of the South Tampa Franchise Agreement, Defendants Three South Tampa and Mr. Taylor agreed that during the term of the Franchise Agreement, they will not divert, or attempt to divert, any customer or prospective customer to a “Competing Business,” defined as “any fitness or exercise marketing or consulting business, any business offering products of a similar nature to those of the Studio, or in any business or entity which franchises, licenses, or otherwise grants to others the right to operate such aforementioned businesses.” (Exs. C Art. 13.1(A).) Defendants One Hillsborough and Mr. Taylor agreed to substantially similar terms pursuant to Article 13.1(A) of the Downtown Franchise Agreement. (*See* Ex. B Art. 13.1(A).)

36. Pursuant to Article 13.1(B)(2) of the South Tampa Franchise Agreement, Defendants Three South Tampa and Mr. Taylor agreed to the following covenant not

to compete:

> For two (2) years after the expiration, termination, or non-renewal (by [Rumble] or by [Defendants Three South Tampa and Mr. Taylor] for any reason) of this Agreement . . . neither [Three South Tampa and Mr. Taylor] nor any other Restricted Party will own, maintain, engage in, be employed as an officer, director, or principal of, lend money to, extend credit to, lease/sublease to, or have any interest in or involvement with, any other Competing Business: (i) at the Authorized Location; or (ii) within a ten (10) mile radius of (a) the Authorized Location, or (b) any other Rumble Studio owned by [Rumble], its affiliates, or any franchisee, which is open, under lease or otherwise under development as of the date this Agreement expires or is terminated.

(Ex. C, Art. 13.1(B)(2).) The Franchise Agreements define "Restricted Party" as "Franchisee, its principals, owners, or guarantors, [and] any immediate family of Franchisee, its principals, owners, or guarantors." (Exs. B and C, Art. 13.1(A).) Defendants One Hillsborough and Mr. Taylor agreed to a substantially similar covenant not to compete pursuant to Article 13.1(B)(2) of the Downtown Franchise Agreement. (*See* Ex. B.)

37. Pursuant to Article 13.2(B) of the South Tampa Franchise Agreement, Defendants Three South Tampa and Mr. Taylor also agreed to non-solicitation obligations as follows:

> . . . for two (2) years after the expiration or termination (by [Rumble] or by [Defendants Three South Tampa and Mr. Taylor] for any reason) of this Agreement . . . neither [Three South Tampa and Mr. Taylor] nor any other Restricted Party will (i) solicit business from customers of [Three South Tampa and Mr. Taylor's] former Studio or any other Rumble Studio, or (ii) contact any of [Rumble's] suppliers or vendors for any competitive business purpose.

(Ex. C Art. 13.2(B).) Defendants One Hillsborough and Mr. Taylor agreed to substantially similar non-solicitation obligations pursuant to Article 13.2(B) of the

Downtown Franchise Agreement. (*See* Ex. B.)

38. Pursuant to Article 13.3 of the Franchise Agreements, the Franchisee Defendants agreed that "in view of the nature of the System and the business of Franchisor, the restrictions contained in this Article 13 are reasonable and necessary to protect the legitimate interests of the System and Franchisor." (Exs. B and C Art. 13.3.) The Franchisee Defendants also agreed that the existence of any claims they may have against Rumble shall not constitute a defense to the enforcement of Article 13 covenants. (*Id.*) They also agreed that any violation of such obligations, or any other obligations under Article 13 of the Franchise Agreements, will cause irreparable injury to Rumble for which there is no adequate remedy at law. (*Id.*) Accordingly, the Franchisee Defendants agreed that Rumble shall be entitled to preliminary and permanent injunctive relief and damages, including an equitable accounting of all earnings, profits, and other benefits, which shall be cumulative remedies to any other rights and remedies Rumble is entitled to. (*Id.*) The Franchisee Defendants further agreed to pay all costs and expenses, including attorneys' fees, incurred by Rumble in connection with the enforcement of Article 13. (*Id.*)

## F. Rumble's Termination Rights and the Franchisee Defendants' Post-Termination Obligations

39. Pursuant to Article 15.1(A) of the Franchise Agreements, "[The Franchisee Defendants] shall be deemed to be in default and [Rumble] may terminate [the Franchise Agreements] and all rights granted [thereunder], without affording [the Franchisee Defendants] any opportunity to cure the default, effective immediately

upon receipt of notice by [the Franchisee Defendants], and such termination shall be for good cause where . . . [the Franchisee Defendants] voluntarily or otherwise abandon[] the Studio[s]." (Exs. B and C, Arts. 15.1(A)(4).) Abandonment includes the failure to operate the fitness studios for more than two business days without Rumble's written consent or any other conduct by the Franchisee Defendants that indicates a desire or intent to discontinue operating the franchise studios pursuant to the Franchise Agreements. (*See* Exs. B and C, Arts. 15.1(A)(4).)

40. Pursuant to Article 15.3 of the Franchise Agreements, the Franchisee Defendants agreed to, among other things, the following upon termination:

a. All rights, privileges, and licenses granted to the Franchisee Defendants by Rumble will immediately be null and void and all such rights, privileges, and licenses shall immediately revert to Rumble;

b. The Franchisee Defendants shall cease operating the Studio and cease being an authorized Rumble franchise owner, and immediately, at their own expense, remove all signs, remove all letterheads, labels or other item or form of identification that would in any way associate the Franchisee Defendants and their goods and/or services with Rumble, and shall cease to use in any manner, the Marks, Confidential Information, System and any other intellectual property of Rumble or its affiliates;

c. The Franchisee Defendants shall immediately terminate all advertising and promotional efforts and any other act that would in any way indicate that the Franchisee Defendants are or ever were an authorized Rumble® franchisee;

d. The Franchisee Defendants shall cancel any assumed names or equivalent registrations that contain any Mark, and furnish Rumble with evidence of compliance with this obligation within five (5) days after termination of the Franchise Agreements;

e. The Franchisee Defendants shall not use any reproduction, counterfeit,

copy, or colorable imitation of the Marks that is likely to cause confusion, mistake or deception, or that is likely to dilute Rumble's rights in and to the Marks. The Franchisee Defendants also shall not use any trade dress or designation of origin or description or representation that falsely suggests or represents an association or connection with Rumble;

f. The Franchisee Defendants shall comply with the covenants set forth in Articles 12 and 13 of the Franchise Agreements.

(*See* Exs. B and C, Arts. 15.3.)

## G. Injunctive Relief and Attorneys' Fees

41. In addition to Rumble's rights to pursue injunctive relief under Articles 12 and 13 of the South Tampa Franchise Agreement, Defendants Three South Tampa and Mr. Taylor also agreed, in Article 16.5, that Rumble may seek and obtain, without posting bond, injunctive or other equitable relief against actual or threatened conduct that Rumble believes is likely to cause loss or damage to its Marks, proprietary information, or the System, in addition to other relief that may be available at law or in equity. (*See* Ex. C, Art. 16.5.)

42. In addition to Rumble's rights to pursue injunctive relief under Articles 12 and 13 of the Downtown Franchise Agreement, Defendants One Hillsborough and Mr. Taylor also agreed, in Article 16.5, that Rumble may seek and obtain, without posting bond, injunctive relief to enforce the provisions of the agreement relating to the Marks, Confidential Information, confidentiality, the restrictive covenants, post-termination obligations, Lanham Act violations, and any act or omission by Defendants One Hillsborough and Mr. Taylor that threaten Rumble, its franchise system, or other franchisees. (*See* Ex. B, Art. 16.5.)

43. In addition to Rumble's rights to attorneys' fees under the injunction provisions of Articles 12.2 and 13.3 of the Franchise Agreements, Rumble is also entitled to attorneys' fees and costs related to this legal action under Article 16.10 of the Franchise Agreements. (*See* Exs. B and C, Art. 16.10.)

**H. The Franchisee Defendants' Abandonment of Their Rumble® Studios**

44. On July 20, 2026, the Franchisee Defendants notified Rumble that they had unilaterally ceased operating their Rumble® Studios on July 18, 2026. Attached as **Exhibit D** is true and correct copy of this email.

45. Rumble subsequently learned that Defendants were rebranding the Franchisee Defendants' former Rumble® Studios to competing businesses under the name "Temper," and that Temper provides the same fitness services as those previously offered at the Franchisee Defendants' former Rumble® Studios and at Rumble studios nationwide. Defendants caused Defendant Temper Studios LLC ("Temper") to be registered with Florida's Division of Corporations on July 16 2026, before the closing of the Franchisee Defendants' Studios. Attached as **Exhibit E** are true and correct copies of this registration.

46. Based on the Franchisee Defendants' abandonment of their Rumble® Studios and their unlawful operation of their competing business, Temper, in conjunction with Defendants Temper and Ms. Hunt, Rumble sent Defendants a Notice of Termination (the "Notice of Termination") dated August 7, 2026, exercising its right to terminate the Franchise Agreements, effective immediately, and requesting the Franchisee Defendants to promptly comply with their contractual post-termination

obligations pursuant to Articles 12, 13, and 15.3 of the Franchise Agreements, and Articles 10.3 and 15.4 of the Downtown Franchise Agreement. This included ceasing use of the Marks and customer data, and returning all Confidential Information, including manuals, training materials, customer information, and all other proprietary information to Rumble. Attached as **Exhibit F** is a true and correct copy of the Notice of Termination.

47. Specifically, as part of the Notice of Termination, Rumble demanded that the Franchisee Defendants immediately (a) cease and desist operating their Rumble® Studios, (b) cease and desist using the Marks, Confidential Information, System and any other intellectual property of Rumble or its affiliates, including Rumble's customer data, (c) return to Rumble all Confidential Information and any copies in the Franchisee Defendants' custody, possession, or control, including Rumble's training programs, members and supplies lists, customer data, and any other proprietary information, (d) cease soliciting business from the members/customers of the Franchisee Defendants' former Rumble® Studios, (e) remove any association between the Franchisee Defendants' former Rumble® Studios and any telephone numbers used in connection with the operation of those studios, (f) de-identify any Instagram profiles and their association with the Franchisee Defendants' former Rumble® Studios, (g) comply with all other post-termination obligations, (h) terminate all advertising and promotional efforts and any other act that would in any way indicate that they are or ever were an authorized Rumble® franchisee, (i) cancel any assumed names or equivalent registrations that contain any Mark, and furnish Rumble with evidence of

compliance with this obligation within five (5) days after termination of the Franchise Agreements, (j) immediately de-identify and remove all social media platforms, websites, online directories, digital marketing channels, and other aspects of their online presence associated with their former Rumble® Studios, and (k) immediately cease operating their competing business, Temper, and any other Competing Business they are operating, for a period of two years from the date of termination, among other things. *See* Ex. F.

48. The Notice of Termination also requested Defendants Temper and Ms. Hunt to comply with the Franchise Agreements' restrictive covenants, and requested that they immediately cease operating the competing business in active concert and participation with the Franchisee Defendants. The Notice also directed Ms. Hunt to immediately remove her association with Rumble online, including her Instagram and LinkedIn profiles. She was further notified that the Franchisee Defendants cannot operate a competing business and solicit customers of their former Rumble® Studios indirectly through Ms. Hunt or Temper. *Id.*

**I. The Franchisee Defendants, in Active Concert and Participation with Defendants Temper and Hunt, are Violating their Non-Compete Covenants, Non-Solicitation Obligations, and Other Post-Termination Obligations, and are Using and Infringing Upon Rumble's Marks, Confidential Information and Customer Data Without Authorization.**

49. The Franchisee Defendants have violated the in-term and post-termination provisions of the Franchise Agreements and are infringing on Rumble's Marks in numerous ways. In violation of the Franchisee Defendants' in-term covenant

not to compete, their non-solicitation obligations, and their obligation not to use the Marks for anything but their Rumble® Studios, Defendants sent an email blast to the customers of the Franchisee Defendants' former Rumble® Studios before the Franchisee Defendants abandoned the Studios on July 18, 2026, announcing (the "Email Announcement"):

> So we're relaunching. Rumble Tampa is becoming TEMPER – **same two locations**, completely rebuilt experience. TEMPER is a fitness studio built around knowing you completely. **Boxing and strength** stay at the center . . . This isn't a rebrand. It's a rebuild. We're opening the doors to a select group first**.** If you want to be among the first to know—and the first in--- add your name here: https://www.temper-studios.com/welcome-back . . . Both locations will temporarily close on July 17, 2026 for renovations as we relaunch. Same address. A new chapter. More details are coming soon.

(Emphasis added.) Attached as **Exhibit G** is a true and correct copy of the Email Announcement sent from the Franchisee Defendants' member management system used by Rumble franchisees to manage customer information and services. As demonstrated by this Email Announcement, the Franchisee Defendants and Defendants Hunt and Temper schemed to unlawfully compete even before the closure of the Studios.

50. In violation of the Franchisee Defendants' post-termination obligations not to compete, their non-solicitation obligations, and other post-termination obligations in the Franchise Agreements, the welcome-back link in the Email Announcement directs the customers of the Franchisee Defendants' Rumble® Studios to the new Temper website and to a page that collects customer information. The

linked website page, states:

> Welcome back [.]
>
> Welcome to the new age of fitness in Tampa. The same people you trust, evolved into a personalized gym experience built around you – your goals, your body, your plan. Drop your details and we'll keep you posted; this list hears first.

Attached as **Exhibit H** are true and correct copies of screenshots of website: www.temper-studios.com and https://www.temper-studios.com/welcome-back.

51. In violation of the Franchisee Defendants' in-term and post-termination covenants not to compete and non-solicitation obligations, Defendants sent a text message to the members of the Franchisee Defendants' Rumble® Studios on July 18, 2026, after the Franchisee Defendants abandoned their Rumble® Studios (the "Text Announcement"), stating:

> Hey everyone! Haley here, co-founder of TEMPER. We officially kick off Forge on Monday, and we couldn't be more excited to get our community back together while we build what's next. Please complete the registration form before attending your first workout—it includes the schedule, workout details, location, and waiver: https://forms.gle/UychYwRnFYBYpukd8. Questions? Text me directly at 813-568-5629. If you're a former member who received this text, we'd love to have you join us—your first week of Forge is on us! If you received this message in error, please disregard. We hope to see you soon! Reply STOP to opt-out.

Ms. Hunt is the former VP of Strategic Growth and Operating Partner of the Franchisee Defendants' former Studios, and a boxing instructor at the Studios since 2023. She is also the co-founder of Temper and an instructor at Temper. Attached as **Exhibit I** is a true and correct copy of a screenshot of this Text Announcement sent from Defendants' member management system.

52. The link in the Text Announcement not only advertises Temper's "Forge x Summer Series Workouts", but it also states:

> The studio may be under construction, but your training doesn't stop.
>
> Beginning Monday, July 20, we'll be kicking off our Outdoor Workout Series to keep our community moving while we build what's next. These workouts are for our members only and are designed to continue building strength, conditioning, and community until TEMPER opens.
>
> For now, this Google Form will serve as our temporary reservation system until our custom TEMPER mobile app is ready. We appreciate your patience while we build something we're incredibly excited to share.
>
> [. . .]
>
> We'll initially be meeting in the South Tampa studio parking lot. *219 S Dale Mabry Hwy, Tampa, FL 33602*
>
> Please note that this location is temporary and subject to change. Outdoor workout permits must be submitted approximately 45 days in advance, so we're beginning at South Tampa while those approvals are processed. If our location changes, we'll communicate updates well ahead of time.

The form lists "Forge Programming", which is a workout series including several days of various types of workouts such as "Boxing + Strength," "Power," "HIIT + Running," "Build," "Mobility + HIIT + Strength," "Finish," and "Endurance + Team Games." Boxing, strength, power, and HIIT are the same workouts provided to members of the Franchisee Defendants' former Rumble® Studios, and as such, Temper is the same type of business that the Franchisee Defendants operated as Rumble® franchisees. The form was sent to customers of the Franchisee Defendants' former Studios and is Defendants' clear attempt to exploit and capitalize on the goodwill, customer relationships, brand recognition, and established customer traffic

associated with the Franchisee Defendants' former Rumble® Studios and the Rumble® system to promote and build interest in Temper before its opening. Defendants are using the Franchisee Defendants' and Ms. Hunt's former association with Rumble® to market, develop, and generate customers for their competing business. Attached as **Exhibit J** are true and correct copies of screenshot of this form.

53. In violation of the Franchisee Defendants' in-term and post-termination covenants not to compete and non-solicitation obligations, Defendants began operating Temper before the Franchisee Defendants' Rumble® Studios closed. As stated earlier, Temper was publicly registered with the Florida Division of Corporations on July 16, 2026, two days before the Studios' closure on July 18, 2026. Additionally, on May 5, 2026, Becka Bradshaw, an individual connected to Mr. Taylor via his personal Instagram account (i.e., @hankv2.0) and a customer of the Franchisee Defendants' former Rumble® Studios, posted to her Instagram account (i.e., @beckabradshaw) a post saying "I walked into @tempertampabay anyway . . . I just completed 100 classes in 11 months. . . Boxing didn't just make me stronger physically . . . Will you show up and fight? First one's on me." The post includes video of Ms. Bradshaw in one of the Franchisee Defendants' Rumble® Studios boxing into a punching bag. In the comments section of the post, Defendants' Instagram account for Temper (i.e., @tempertampabay) comments "A true fighter." Ms. Bradshaw's post associates Temper and Rumble, as demonstrated by her tagging of @tempertampabay and #rumbleboxing. This demonstrates a likelihood of customer confusion, if not actual customer confusion. This post also demonstrates customer conversion,

solicitation, and competition in contravention of the Franchise Agreements. Attached as **Exhibit K** are true and correct copies of screenshots of this post and its related comments.

54. In violation of the Franchisee Defendants' post-termination obligations, Defendants created an Instagram account for Temper with the handle, @tempertampabay, and which contains tagged Instagram posts associated with the Franchisee Defendants' former Rumble® Studios, creating an unlawful association between the Studios and Temper. The @tempertampabay account currently has 4,323 followers, which, upon information and belief, was achieved through Defendants' use of and association with Rumble's Marks, goodwill, and the customer relationships built at the Franchisee Defendants' former Studios. Rumble believes a substantial number of these followers are current or former customers of the Franchisee Defendants' former Rumble® Studios. By maintaining and promoting the @tempertampabay account through associations with Rumble-related content, Defendants are using the account to market Temper and to solicit and divert former Rumble® customers and prospective customers to their competing business. Additionally, this account follows at least five other Instagram accounts associated with Rumble (i.e., @rumbleboxingdurbinpark, @rumbleboxingfortlauderdale, @rumble_with_mark, @paig_rumbleboxing, @rumbleboxingkeller). Attached as **Exhibit L** are true and correct copies of screenshots of a Tempers Instagram profile, a sampling of posts associated with Rumble, including an advertisement by @vgpflow for the Franchisee Defendants and Mr. Taylor at the Downtown Studio, and posts that

have been commented on by @tempertampabay. Attached as **Exhibit M** are true and correct copies of screenshots of a sampling of followers of @tempertampabay who also follow the Franchisee Defendants' Instagram account for their former Rumble® South Tampa Studio, @rumbleboxingsouthtampa.

55. In violation of the Franchisee Defendants' post-termination obligations, Mr. Taylor's personal Instagram account, @hankv2.0, currently identifies him as the "Owner and Founder of @tempertampabay" and includes tagged posts advertising the Franchisee Defendants' former Rumble® Studios. These posts feature both still images and video content believed to be taken at the Rumble® Studios. On July 31, 2026, Mr. Taylor posted to @hankv2.0, a group photo with Ms. Hunt (and others) of a 6:30 a.m. Temper workout led by Ms. Hunt in the South Tampa Studio parking lot, and which tagged @tempertampabay. Attached as **Exhibit N** are true and correct copies of screenshots of Mr. Taylor's Instagram account and the associated posts.

56. Ms. Hunt's personal Instagram account, @hahunt13, identifies her as the "co-founder @tempertampabay" and includes posts and tagged posts associating her with Rumble and the Franchisee Defendants' former Rumble® Studios. Her social media presence makes clear that she is an instructor for the Franchisee Defendants' Studios. Through her association with Rumble and her role as co-founder of Defendants' competing business, Ms. Hunt is tortiously interfering with the Franchise Agreements and she has promoted, aided, and furthered the Franchisee Defendants' violations of the Franchise Agreements' non-compete and non-solicitation obligations through her contact with customers of the former Rumble® Studios via the Email and

Text Announcements and her social media reach, among other things. On July 31, 2026, Ms. Hunt posted to @hahunt13, the same group photo Mr. Taylor posted of a 6:30 a.m. workout (led by Ms. Hunt) and which tagged @tempertampabay. On August 1, 2026, Ms. Hunt posted another group photo of a workout she led for Temper in the South Tampa Studio's parking lot. Attached as **Exhibit O** are true and correct copies of screenshots of Ms. Hunt's Instagram account and the associated posts.

57. The social media posts discussed above demonstrate Temper, Mr. Taylor, and Ms. Hunt's flagrant customer diversion and the operation of their competing business and demonstrate a flagrant and deliberate disregard of the Franchisee Defendants' post-termination obligations, and associations with Rumbles' Marks.

58. On July 31, 2026, a customer of Defendants' former Rumble® Studios, Mercedes Hawkins, posted to her Instagram account, @themercedeshawkins, the same group photo Mr. Taylor and Ms. Hunt posted to their Instagram accounts described above. This further demonstrates actual customer diversion and Temper, Mr. Taylor, and Ms. Hunt's efforts to capitalize on the customer goodwill associated with the Franchisee Defendants' former Rumble® studios. Attached as **Exhibit P** are true and correct copies of screenshots of Ms. Hawkin's Instagram Account demonstrating this post and another one demonstrating she is a member of Defendants' former Rumble® studios.

59. The Franchisee Defendants' Studios continue to have Rumble® branded exterior signage. In addition, as demonstrated by the Email and Text Announcements,

and Temper's public filing with Florida's Division of Corporations, Temper's studios are at the same locations as the Franchisee Defendants' former Rumble® Studios. Accordingly, Defendants are committing trademark infringement by using Rumble's Marks at these locations. Attached as **Exhibit Q** are true and correct copies of pictures demonstrating this exterior signage at both Studios.

60. Mr. Taylor's LinkedIn profile states that he is a current franchise owner of Rumble in Tampa, Florida and has been since November 2021. Ms. Hunt's LinkedIn profile states that she is the VP of Strategic Growth and Operating Partner of the Franchisee Defendants' Rumble® Studios since 2023. Ms. Hunt's LinkedIn profile picture is of her with Rumble® branded boxing gloves and tank top, another association with Rumble and her infringing use of Rumble's Marks. Attached as **Exhibit R** are true and correct copies of screenshots of Mr. Taylor and Ms. Hunt's LinkedIn profiles.

61. The Franchisee Defendants' Yelp page for their former Downtown Studio is still active and contains Rumble® branded images and Marks. Additionally, the telephone number on the Yelp page, relays an active message saying "Thanks for calling Rumble Boxing Tampa. Press 1 for the Downtown Tampa Studio and Press 2 for the South Tampa Studio." Attached as **Exhibit S** are true and correct copies of screenshots of this Yelp page.

62. The Franchisee Defendants have failed to return all Confidential Information, including customer data, in their custody, possession, or control, as required by the South Tampa Franchise agreement, and requested by the Notice of

Termination. The Franchisee Defendants continue to unlawfully have access to customer/membership information and data in contravention of the Franchise Agreements.

63. As evidenced by the closure of the Studios, the Email and Text Announcements, Mr. Taylor, Ms. Hunt, and Temper's creation and promotion of the Temper Instagram account (@tempertampabay), the solicitation of Rumble® customers, the migration of customers and followers to Temper's Instagram account, Defendants' other online and social media activities, and Mr. Taylor, Ms. Hunt, and Temper's workout programs at the South Tampa Studio's parking lot, Defendants are actively developing, marketing, and operating their competing business. (*See* Exs. G-S.) These actions, together with the continued use of Rumble® branding at the Studios, demonstrate Defendants' intent to leverage the Franchisee Defendants' former Rumble® locations, Rumble's customer data, customer relationships developed at the Studios, and Rumble's Marks and goodwill to launch and promote Temper, and to compete unlawfully and unfairly with Rumble. (*See id*.) These activities further demonstrate that Defendants have solicited, and continue to actively solicit, customers and prospective customers of the Franchisee Defendants' former Rumble® Studios both during the term of the Franchise Agreements and following their termination. (*See id*.)

64. These actions constitute material breaches of the Franchisee Defendants' restrictive covenants and post-termination obligations under the Franchise Agreements, as well as material breaches of their obligations to cease use of Rumble's

Confidential Information (which includes customer data), return Confidential Information and other proprietary materials, and discontinue use of identifiers in association with the terminated franchises, such as Rumble's Marks and the phone number associated with their former Rumble® fitness studios, among other things.

65. Additionally, Defendants' unauthorized use of Rumble's federally protected Marks on exterior signage at the Studios, on the Downtown Studio's active Yelp page, and Mr. Taylor and Ms. Hunt's associations with Rumble on their Instagram and LinkedIn pages, are efforts to trade on the goodwill associated with the Rumble® Marks and constitutes trademark infringement under the Lanham Act.

66. Defendant Temper and Ms. Hunt's actions, as described above, constitute tortious interference with the Franchise Agreements, including the Franchisee Defendants' non-compete and non-solicitation obligations, as well as trademark infringement. The foregoing conduct further demonstrates their knowing participation in and furtherance of the Franchisee Defendants' breaches of the Franchise Agreements and violations of the Lanham Act. Moreover, Defendants conspired, combined, agreed, and acted in concert to devise and implement a coordinated scheme to evade the Franchise Agreements' restrictive covenants, continue operating a competing business through Ms. Hunt and Temper, misappropriate the goodwill associated with Rumble's brand and Marks, misappropriate customer data, and unlawfully divert customers, business opportunities, and other benefits rightfully belonging to Rumble.

**J. Rumble is Suffering Irreparable Harm**

67. Rumble suffers irreparable harm to the Rumble® System and customer goodwill each day that Defendants continue to operate the Franchisee Defendants' former Rumble® Studios under the name "Temper" in the same territories, using Rumble's goodwill and Confidential Information, including Rumble's member/customer lists and data. Additionally, Rumble suffers irreparable harm each day that Defendants continue to infringe on Rumble's name and Marks, as described above. Such infringement confuses the public as to Defendants and their competing business' affiliation with Rumble and places the Rumble® brand's reputation and goodwill in jeopardy.

68. The following statements made by Defendants to members of the Franchisee Defendants' Rumble® Studios are a direct acknowledgment of the strong customer relationships, loyalty, and goodwill cultivated through the Rumble® brand and franchise system: (a) "we couldn't be more excited to get our community back together while we build what's next . . . If you're a former member who received this text, we'd love to have you join us . . . We hope to see you!"; (b) "You've shown up for us. We want to make sure we've shown up for you . . . You gave us your time and trust . . . If you want to be among the first to know – and the first in – add your name here . . . ."; and (c) "to keep our community moving while we build what's next." *See* Exs. G-J. That goodwill is a valuable asset of Rumble—not Defendants—and Defendants are now attempting to transfer and exploit that customer loyalty and goodwill for the benefit of their competing business. The very fact that Defendants

seek to show up for a community that has "shown up for [the Franchisee Defendants]" and to get the Rumble® membership community "back together" into their new venture demonstrates the significant value of the goodwill generated through their former Rumble® studios and the ongoing harm to Rumble if that goodwill is allowed to be misappropriated.

69. Accordingly, immediate and permanent injunctive relief is necessary to prevent Defendants from continuing to trade off Rumble's name, reputation, goodwill, and Marks. Additionally, because Defendants are not current Rumble® franchisees, Rumble has no control over Defendants or their competing business. Consequently, Defendants are causing harm to Rumble because they are using Rumble's Confidential Information, including its customer lists and data, Rumble's manuals and other proprietary information, and Marks in a manner that Rumble cannot oversee or control.

70. Further, the conversion of the Franchisee Defendants' Rumble® Studios and the operation of their competing business, Temper, has damaged and is continuing to damage Rumble by preventing it from establishing new franchises or opening company owned locations in Tampa, and by wrongfully diverting customers of the Franchisee Defendant's former Studios and business to Temper.

71. The Email and Text Announcements cast Rumble in a negative light by devaluing Rumble and its services—inherently damaging Rumble's reputation. *See* Exs. G-J. Specifically, the Email Announcement states, "We owe you some honesty about where we've fallen short . . . No real personalization, no system that actually

knew you, no path forward beyond showing up and hoping for the best." By misrepresenting that customers' prior experience lacked personalization, meaningful member engagement, and a viable path for progress, Defendants implicitly criticize and devalue the services and system previously offered through their Rumble® Studios. These self-righteous and disparaging statements are likely to undermine customer confidence in the Rumble® brand, diminish the goodwill associated with the Rumble® system, and encourage customers to abandon Rumble in favor of Temper. They also serve to persuade customers that Defendants' competing brand offers a superior experience.

72. Moreover, Defendants' conduct has inflicted and continues to threaten additional substantial harm to Rumble's entire franchise system and business model. Rumble's franchisees operate within a close-knit network and they are likely monitoring the outcome of this action due to their frustrations with Rumble's predecessor—challenges that Rumble has inherited through its acquisition of the Rumble® system and is actively trying to rectify with its franchisees. In fact, Mr. Taylor has shared with Rumble that one of the reasons that he was abandoning his Rumble Studios is that other franchisees were doing the same. The most recent of such closures include franchisees in Fort Lauderdale and Boynton Beach, Florida who abandoned their franchises and are opening a competing business, The Foundry Athletics. Defendants' actions will only contribute to a domino effect, emboldening other franchisees to leave the System and to cause harm to additional territories, customer relationships, and Rumble's overall market presence nationwide. Rumble

did not acquire the Rumble® System to facilitate its erosion, and it has the responsibility to protect the brand and the broader Rumble® franchise community.

73. Absent injunctive relief, other franchisees will continue to be emboldened to engage in similar conduct, believing that they too can violate their contractual obligations without consequence and open their own competing businesses. Such a result would jeopardize the integrity of Rumble's franchise system, erode the value of its brand and franchise agreements, and cause harm that is exceedingly difficult, if not impossible, to quantify. The loss of numerous franchisees, who would then become well-trained competitors of Rumble and its remaining franchisees, would irreparably harm the entire franchise system. Moreover, potential franchisees may have little confidence that Rumble will protect their interests as franchisees of the Rumble® system if Rumble's non-compete and non-solicitation agreements are of no effect—limiting Rumble's growth. Accordingly, Rumble cannot permit debranding or conversion to an independent concept outside the terms of the franchise agreements for any franchisee. It would be inconsistent with how the Rumble® System must be administered, including the need for uniform enforcement across the Rumble® franchise network. For the reasons stated above, Rumble has no adequate remedy at law, and the only meaningful relief available to it is an injunction enjoining Defendants—and those acting in concert with them—from their wrongful and unlawful behavior and their continuation of the irreparable harms that Rumble has suffered and will continue to suffer absent an injunction.

74. Rumble therefore seeks immediate preliminary and permanent injunctive

relief.

**COUNT I**

**The Franchisee Defendants' Breach of Confidentiality Obligations, Non-Compete and Non-Solicitation Covenants, and Post Termination Obligations Under the Franchise Agreements**

75. Rumble specifically realleges and incorporates by reference ¶¶ 18, 20-23, 24-27, 28-40, 41-43, 44-48, 49-66, 67-74, as if fully set forth herein.

76. The Franchise Agreements are valid, binding, and legally enforceable agreements between the Franchisee Defendants and Rumble. (*See supra* Section B.)

77. By virtue of executing the Guarantee, Indemnification, and Acknowledgement Agreement related to the Downtown Franchise Agreement, Defendant Taylor agreed to be personally liable and responsible for Defendant One Hillsborough's payment and performance obligations. (*See supra* ¶ 24.)

78. By virtue of executing the Guarantee, Indemnification, and Acknowledgement Agreement related to the South Tampa Franchise Agreement, Defendant Taylor agreed to be personally liable and responsible for Defendant Three South Tampa's payment and performance obligations. (*See supra* ¶ 25.)

79. Rumble has performed all conditions, covenants, and promises required to be performed under the Franchise Agreements.

80. As described above, the Franchisee Defendants have failed to comply with their post-termination obligations. (*See generally supra* Section I.) The Franchisee Defendants are operating a competing business in active concert and participation with Defendants Temper and Ms. Hunt, have failed to return Rumble's Confidential

Information, are using Rumble's customer and membership data to solicit members for their competing business, and are continuing their unauthorized use of and association with Rumble's Marks at the physical locations for their former Rumble® Studios, on Yelp, Instagram, and on LinkedIn. (*Id*.) The Franchisee Defendants also continue to associate the telephone number used for their former Studios with Rumble. (*See supra* ¶ 61.) As a result, the Franchisee Defendants are in breach of the Franchise Agreements.

81. The Franchisee Defendants' conduct and breaches are causing irreparable harm and damage to Rumble. (*See generally supra* Section J.) They are improperly leveraging the goodwill, customer relationships, Confidential Information, operational know-how, and market presence developed through their Rumble® franchises to divert customers of the Studios to Defendants' competing fitness business, Temper. (*See generally supra* Sections I and J.) The Franchisee Defendants' conduct signals to other franchisees and prospective franchisees that the confidentiality obligations, restrictive covenants, and post-termination obligations may be disregarded without consequence, thereby jeopardizing Rumble's ability to protect its brand, Confidential Information, goodwill, Marks, and franchise network. (*See supra* ¶¶ 71-73.) If left unchecked, the Franchisee Defendants' actions also risk encouraging similar breaches by additional franchisees, which could result in the additional loss of franchise fees, royalties, and other revenue streams upon which Rumble relies to operate and support its franchise system. (*See supra* ¶ 73.)

82. The resulting financial losses, loss of customer loyalty, erosion of Rumble's goodwill, misuse of Confidential Information and other proprietary information, solicitation of customers of the Franchisee Defendants' former Rumble® fitness studios, and damage to the integrity of Rumble's franchise system are injuries that are inherently difficult to measure and cannot be adequately remedied through an award of monetary damages.

83. Accordingly, absent immediate injunctive relief, Rumble will continue to suffer substantial and irreparable harm. Rumble has no adequate remedy at law to protect its substantial business and property rights at issue in this lawsuit. The damages from the Franchisee Defendants' failure to comply with their confidentiality obligations, non-compete and non-solicitation covenants, and post-termination obligations of the Franchise Agreements are considerable and continuing and thus not capable of ascertainment at this time.

84. As a direct and proximate result of the Franchisee Defendants' actions, Rumble is entitled to preliminary and permanent injunctive relief enforcing the confidentiality obligations, non-compete and non-solicitation covenants, and the post-termination obligations of the Franchise Agreements, plus costs, disbursements, interest, and attorneys' fees.

**COUNT II**
**Defendants' Trademark Infringement**

85. Rumble specifically realleges and incorporates by reference the previous allegations in ¶¶ 14, 15, 18-23, 24-28, 39-40, 41-43, 44, 46-48, 49-66, 67-74.

86. Rumble owns valid and enforceable rights in Rumble's Marks, trade name, logo, and related branding, which are federally registered and widely recognized in the boxing and fitness studio industry, including those registered with the United States Patent and Trademark Office with registration numbers 5148086, 7600026, 5229039, 5189658, 5264943, and 5264945.

87. Since registering the Marks, Rumble and its predecessors have exclusively advertised the Marks in connection with the Rumble® System.

88. Under the Franchise Agreements, the Franchisee Defendants were granted a limited, non-transferable license to use the Marks solely in connection with the operation of their authorized Rumble® franchises and Studios. That license was terminated upon the termination of the Franchise Agreements. Accordingly, the Franchisee Defendants have no current right to use Rumble's Marks.

89. Defendants Hunt and Temper are not authorized or licensed to use the Rumble® Marks in any capacity, including the exterior signage at Temper's studios located at the same locations as the Franchisee Defendants' former Rumble® Studios, and in any online and social media presence.

90. Despite these clear contractual and legal restrictions, Defendants are using Rumble's Marks in association with the operation of their competing business, Temper. Defendants continue to display Rumble's trademarks and branding as exterior signage at the former Rumble® Studios, on the Yelp page for the former Downtown Studio which now shares an address with Temper, on Mr. Taylor and Ms.

Hunt's Instagram and LinkedIn profiles, and elsewhere without authorization. (*See generally supra* Section I.)

91. Defendants' unauthorized use of Rumble's Marks in commerce is likely to cause confusion, mistake, or deception among consumers as to Rumble's approval of such use, the affiliation, connection, sponsorship, or association between Defendants and Rumble. Moreover, Rumble's customers have been or are likely to be confused as to the sponsorship of Temper's services provided by Defendants while they continue to hold themselves out as associated with the Rumble® System and the Franchisee Defendants hold themselves out as Rumble franchisees. Defendants' conduct constitutes trademark infringement in violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C. § 1114 and 1125(a), and common law.

92. Defendants' conduct is willful and intentional, undertaken with full knowledge of Rumble's rights and with the purpose of trading on Rumble's reputation and goodwill. Despite the Franchisee Defendants' abandonment of their franchises and being notified of their post-termination obligations, and Defendants Hunt and Temper being notified of the same, Defendants have failed to remove all Marks and their unlawful associations with Rumble. (*See generally supra* Section I.)

93. Rumble has no adequate remedy at law to protect its legitimate business and proprietary rights at issue in this lawsuit. The damages from the Defendants' ongoing trademark violations are considerable and continuing and thus not capable of ascertainment at this time.

94. As a direct and proximate result of Defendants' infringement and unauthorized use of Rumble's Marks, Rumble has suffered and continues to suffer irreparable harm, including loss of control over its brand, damage to its reputation, and customer confusion. (*See generally supra* Section J.) Rumble is therefore entitled to preliminary and permanent injunctive relief against all Defendants under 15 U.S.C. § 1116 and attorneys' fees and costs under 15 U.S. Code § 1117.

95. Defendants Hunt and Temper have profited and are profiting from such infringement, and Rumble has been, and is being, damaged by such infringement. Rumble is therefore entitled to recover all applicable damages, under 15 U.S. Code § 1117, from Defendants Hunt and Temper in an amount to be proven at trial because of their infringing activities, plus attorneys' fees and costs.

**COUNT III**
**False Designation of Origin and Unfair Competition Against Defendants**

96. Rumble specifically realleges and incorporates by reference the previous allegations in ¶¶ 14, 15, 18-23, 24-28, 39-40, 41-43, 44, 46-48, 49-66, 67-74, 85-95.

97. Rumble owns valid and enforceable rights in Rumble's Marks, trade name, logo, and related branding, which are federally registered and widely recognized in the boxing and fitness studio industry, including those registered with the USPTO, as described above.

98. Defendants, without Rumble's authorization or consent, have used in interstate commerce Rumble's Marks in a way that falsely suggests an affiliation, connection, sponsorship, or approval by Rumble. (*See generally supra* Section I.)

99. Defendants' conduct constitutes unfair competition by false designation of origin and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

100. Defendants' unauthorized use of the Marks is likely to cause confusion, mistake, or deception among consumers as to the affiliation, connection, or association between Rumble and Defendants' competing business, Temper.

101. Defendants' conduct was willful and intentional, undertaken with full knowledge of Rumble's rights and with the purpose of trading on Rumble's reputation and goodwill. (*See generally supra* Section I.)

102. Rumble has no adequate remedy at law to protect its legitimate business and proprietary rights at issue in this lawsuit. The damages from Defendants' ongoing unfair competition are considerable and continuing and thus not capable of ascertainment at this time.

103. As a direct and proximate result of Defendants' unfair competition, false designation, and unauthorized use of Rumble's Marks, Rumble has suffered and continues to suffer irreparable harm, including loss of control over its brand, damage to its reputation, and likely customer confusion. (*See generally supra* Sections I and J.) Rumble is therefore entitled to preliminary and permanent injunctive relief against all Defendants under 15 U.S.C. § 1116 and attorneys' fees and costs under 15 U.S. Code § 1117.

104. Defendants Hunt and Temper have profited and are profiting from their unfair competition, false designation, and unauthorized use of Rumble's Marks, and

Rumble has been, and is being, damaged by such conduct. Rumble is therefore entitled to recover all applicable damages, under 15 U.S. Code § 1117, from Defendants Hunt and Temper in an amount to be proven at trial because of their infringing activities, plus attorneys' fees and costs.

**COUNT IV**
**Defendants Hunt and Temper's Tortious Interference with Existing Contract**

105. Rumble specifically realleges and incorporates by reference ¶¶ 18, 20-23, 24-27, 28-40, 41-43, 44-48, 49-66, 67-74, 75-104 as if fully set forth herein.

106. The Franchise Agreements are valid, enforceable contracts between Rumble and the Franchisee Defendants.

107. Defendants Temper and Ms. Hunt knew about and are aware of the Franchise Agreements, including their post-termination obligations and restrictive covenants, between Rumble and the Franchisee Defendants by virtue of their business relationships with the Franchisee Defendants. Temper has two co-founders, Ms. Hunt and Mr. Taylor. Neither Temper nor Ms. Hunt are contracting parties to the Franchise Agreements.

108. By operating a competing business in conjunction with the Franchisee Defendants, sending the Email and Text Announcements referenced above, using Rumble's Marks at the Temper studio locations, converting customers of the Franchisee Defendants' former Rumble® studios, disparaging Rumble and casting Rumble in a negative light, intentionally benefiting from Rumble's goodwill, and the other actions described in *supra* Section I, Temper and Ms. Hunt have intentionally,

unjustifiably, and tortiously interfered with the Franchisee Defendants' contractual relationship with Rumble, inducing and assisting the Franchisee Defendants in circumventing and breaching their post-termination, non-compete, and non-solicitation obligations, and trademark restrictions without justification.

109. Defendants Temper and Ms. Hunt's interference is a proximate cause of Rumble's damages, including loss of business, customer relationships, and brand goodwill.

110. As a direct and proximate result of Defendants Hunt and Temper's tortious interference with Rumble's contractual rights, Rumble suffered and continues to suffer damages. Rumble is entitled to recover damages against Defendants Hunt and Temper, jointly and severally, in an amount to be determined at trial, plus attorneys' fees and costs.

## COUNT V
## Defendants' Civil Conspiracy

111. Rumble realleges and incorporates by reference the previous allegations in ¶¶ 18, 20-23, 24-27, 28-40, 41-43, 44-48, 49-66, 67-74, 75-110 as if fully set forth herein.

112. With full knowledge of the Franchise Agreements' non-compete, non-solicitation, and post-termination obligations, Defendants combined, agreed, and acted in concert to develop a plan and scheme to operate their competing fitness studio in the same territories as the Franchisee Defendants' former Rumble® Studios. The specific purpose and intent of this scheme is to solicit and divert customers of the

Studios to Temper, infringe on Rumble's Marks and their associated goodwill, and to help the Franchisee Defendants evade the restrictive covenants and post-termination obligations of the Franchise Agreements. (*See generally supra* Section I.)

113. Defendants secretly created, planned, and executed their conspiracy for the purpose of depriving Rumble of the financial and contractual benefits of the Franchise Agreements, usurping the goodwill cultivated through Rumble's name, Marks, System, and reputation, and appropriating for themselves the business opportunities and customer relationships developed through the Franchise System. (*See generally supra* Section I.)

114. In furtherance of the conspiracy, Defendants coordinated and set forth a plan to continue operating the Franchisee Defendants' Rumble Studios under the new name, Temper, to divert customers of the Studios and Rumble's goodwill to Temper, and to infringe upon Rumble's Marks as Defendants are doing now. (*See generally id*.)

115. As a direct and proximate result of Defendants' conspiracy, Rumble has suffered and continues to suffer damages, including irreparable harm to its business, brand, and customer relationships. Rumble is entitled to recover damages against Defendants Hunt and Temper, jointly and severally, in an amount to be determined at trial, plus attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Rumble respectfully requests the following relief against Defendants:

A. An order ratifying and enforcing the termination of the Franchise Agreements.

B. For an order for a preliminary and permanent injunction directing Defendants and all others in active concert or participation with them, to immediately cease operating a competing business and soliciting Rumble® customers in violation of the Franchise Agreements;

C. For an order for a preliminary and permanent injunction directing the Franchisee Defendants, and all others in active concert or participation with them, to immediately comply with the confidentiality, non-compete, non-solicitation, and all other post-termination obligations set forth in the Franchise Agreements, including but not limited to the provisions that require Franchisee Defendants to cease using Rumble's Confidential Information, customer/membership data and information;

D. For an order for preliminary and permanent injunctions directing Defendants, and all others in active concert or participation with them, to immediately cease using or employing any of the Marks and to immediately cease engaging in unfair competition with Rumble;

E. For an award against Defendants Temper and Hunt pursuant to 15 U.S.C. § 1117, jointly and severally, for the damages Rumble has sustained and the profits Defendants Temper and Hunt have derived as a result of their violations of the Lanham Act;

F. For an award against Defendants Temper and Hunt, jointly and severally, for treble damages and prejudgment interest in accordance with §35 of the Lanham Act, 15 U.S.C. § 1117;

G. For an order, pursuant to 15 U.S.C. § 1116(a), requiring Defendants to file with the Court and serve on Rumble, within thirty (30) days after service on it of an Order of injunction, a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

H. For an award against Defendants, jointly and severally, for Rumble's costs, disbursements, and attorneys' fees incurred in this action, as allowed by the Lanham Act;

I. For an award against Defendants Temper and Hunt, jointly and severally, for the damages caused to Rumble as a result of their civil conspiracy and tortious interference with Rumble's contractual relations;

J. For an award against the Three South Tampa and Mr. Taylor, jointly and severally, for Rumble's reasonable attorneys' fees and costs incurred in enforcing the provisions of the South Tampa Franchise Agreement;

K. For an award against One Hillsborough and Mr. Taylor, jointly and severally, for Rumble's reasonable attorneys' fees and costs incurred in enforcing the provisions of the Downtown Franchise Agreement;

L. For such other relief as the Court deems just and proper.

Dated: August 14, 2026

Respectfully submitted,

/s/ Theresa Nolan Breslin
Theresa Nolan Breslin (FL # 97821)
LATHROP GPM LLP
1015 15th Street NW, Suite 1050
Washington, D.C. 20005
Telephone: 202.295.2200
Facsimile: 202.295.2224
theresa.breslin@lathropgpm.com

Craig P. Miller (*pro hac vice* forthcoming)
LATHROP GPM LLP
3100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612.632.3258
craig.miller@lathropgpm.com

Cassie L. Doutt (*pro hac vice* forthcoming)
LATHROP GPM LLP
2029 Century Park East
Suite 1280N
Los Angeles, CA 90067-1623
Telephone: 310.789.4630
Facsimile: 310.789.4601
cassie.doutt@lathropgpm.com

**ATTORNEYS FOR PLAINTIFF**